UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 08-10223-PBS |
| v. | ) | 09-10292-PBS |
| | ) | 09-10382-DPW |
| ALBERT GONZALEZ, | ) | |
| | ) | |
| Defendant. | ) | |

### GOVERNMENT'S CONSOLIDATED RESPONSE TO ALBERT GONZALEZ'S MOTIONS TO VACATE, SET ASIDE, OR CORRECT SENTENCES

The United States files this response to the Petitions Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentences filed by Albert Gonzalez.[1] For the reasons set forth below, the Courts should deny Gonzalez's motions without a hearing.

### BACKGROUND

Between 2003 and 2008, Gonzalez committed computer crimes, identity thefts, and wire frauds resulting in the theft of tens of millions of credit and debit card numbers, causing hundreds of million of dollars in financial losses.[2] He was indicted for these crimes in three districts: first in the Eastern District of New York (the "Dave and Buster's" case) on May 14, 2008, then in the District of Massachusetts (the "TJX" case) on August 5, 2008, and finally in the District of New Jersey (the "Heartland" case) on August 17, 2009. At the end of 2009, Gonzalez entered into contemporaneous plea agreements in the Dave and Buster's and TJX

---

[1] For simplicity and clarity, citations in this Consolidated Response will refer to cases by the name of their principal victims: *United States v. Albert Gonzalez*, 08-CR-10223-PBS as "TJX"; *United States v. Albert Gonzalez*, 09-CR-10262-PBS as "Dave and Buster's"; and *United States v. Albert Gonzalez*, 09-CR-10382-DPW as "Heartland."

[2] *See* TJX and Dave and Buster's Presentence Report at 23-39 and 43-51; Heartland Presentence Report at 19-45.

cases.[3] Pursuant to the terms of the TJX agreement, the parties agreed to transfer the Dave and Buster's case to Massachusetts for plea and sentencing.[4] Once in Massachusetts, the Dave and Buster's case was randomly drawn to Judge Saris, before whom the TJX case was already pending.

Two months later, on November 20, 2009, Gonzalez entered into a plea agreement in the Heartland case.[5] Again, pursuant to terms contained in the TJX agreement, the Heartland case was transferred from the District of New Jersey to the District of Massachusetts for plea and sentencing.[6] In this instance, the case was drawn to Judge Woodlock. Gonzalez was sentenced to concurrent sentences in the 3 cases resulting effectively in a sentence of imprisonment of 20 years.[7]

On March 24, 2011, Gonzalez filed Petitions Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence in the Dave and Buster's, TJX, and Heartland cases ("Petitions").[8] In his petitions, Gonzalez sought to vacate his sentence, claiming his guilty plea was not knowingly and voluntarily entered and that he received ineffective assistance of counsel in connection with his plea. To enable the United States to respond to Gonzalez's motions, the United States moved,

---

[3] Exhibits 1 and 2, attached hereto.

[4] TJX Plea Agreement, Exhibit 2 at ¶5.

[5] Exhibit 3, attached hereto.

[6] A reciprocal provision was contained in the Heartland Plea Agreement, Exhibit 3 at p.5.

[7] Gonzalez was sentenced by Judge Woodlock to a term of 240 months and a day in the Heartland case to run concurrently with already concurrent sentences of 240 months and 216 months imprisonment imposed by Judge Saris in the TJX and Dave and Buster's cases.

[8] Dave and Buster's, Docket #29; TJX, Docket #121; Heartland, Docket #49.

and Judge Saris directed,[9] that Gonzalez's former attorneys make disclosure to the United States regarding Gonzalez's "ineffective assistance" claims. Defense counsel completed their disclosures on November 10, 2011.  Because the three cases stemmed from a common investigation, the three plea agreements were interrelated, and Gonzalez's grounds for his motions to set aside his three convictions are identical, this Response addresses his § 2255 motions in the three cases together.

<u>STANDARD OF REVIEW</u>

Section 2255 of Title 28, United States Code, provides for post-conviction relief to a federal prisoner in four instances:  "if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack."  *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998), citing *Hill v. United States*, 368 U.S. 424, 426-27 (1962); *see* 28 U.S.C. §2255.  The petitioner bears the burden of establishing the need for relief under §2255.  *David*, 134 F.3d at 474.  Specifically, a petitioner must establish a constitutional error or a "fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure."  *Hill*, 368 U.S. at 428; *United States v. Addonizio*, 442 U.S. 178, 185 (1979).

To obtain relief under §2255, a petitioner "must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).  Simply put, "post-conviction relief on collateral review is an extraordinary remedy, available only on a sufficient showing of fundamental unfairness."  *Singleton v. United States*, 26 F.3d 233, 236 (1st

---

[9] Dave and Buster's, Docket #36.

3

Cir. 1994); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994) (observing that the

Supreme Court has "narrowly confined" the scope and availability of collateral attack for non-

constitutional and non-jurisdictional claims).

A guilty plea may be attacked on collateral review only in "strictly limited"

circumstances. *Bousley v. United States*, 523 U.S. 614, 621 (1988) (citation omitted).  The

concern with finality "served by the limitation on collateral attack has special force with respect

to guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784 (1979).  Thus, when a defendant

files a §2255 motion to challenge the validity of a conviction upon a guilty plea, "the inquiry is

ordinarily confined to whether the underlying plea was both counseled and voluntary." *United*

*States v. Broce*, 488 U.S. 563, 569 (1989).

It is well-established that, under ordinary circumstances, the voluntariness of a guilty

plea can be questioned on collateral review under 28 U.S.C. §2255 only if, and to the extent that,

the plea has been challenged on direct appeal. *Bousley*, 523 U.S. at 621; *Oakes v. United States*,

400 F.3d 92, 95 (1st Cir. 2005).  Where a §2255 petitioner challenges his conviction or sentence

on a ground that he did not advance on direct appeal, his claim is deemed procedurally defaulted,

and he may go forward only if he can show that there is cause for his default and actual prejudice

resulting from it.[10]  *Bousley*, 523 U.S. at 621-623; *see Frady*, 456 U.S. at 167.

Gonzalez did not seek to set aside his plea in district court, nor did he challenge it on

direct appeal.  Thus, he must show cause for his default and actual prejudice as a result of the

---

[10]A petitioner may also overcome his procedural default if he can show that he is actually
innocent of the offense of conviction.  *Bousley*, 523 U.S. at 622-623.  Actual innocence is at
issue in this case only if the Courts find Gonzalez's public authority claim credible.  *See* pp.10-
13, *infra*.

errors of which he complains.  *Frady*, 456 U.S. at 167; *see Bousley*, 523 U.S. at 622-623.

"Constitutionally ineffective assistance of counsel constitutes cause sufficient to excuse a procedural default."  *Prou v. United States*, 199 F.3d 37, 47 (1st Cir. 1999).  To prove a claim of ineffective assistance of counsel, the defendant must demonstrate that (1) counsel's performance was deficient and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Smiley v. Maloney*, 422 F.3d 17, 20 (1st Cir. 2005), citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Bucuvalas v. United States*, 98 F.3d 652, 658 (1st Cir. 1996) (observing that a defendant's burden of proving both *Strickland* prongs is "heavy").  The defendant must carry his heavy burden by a preponderance of the evidence.  *Cody v. United States*, 249 F.3d 47, 52 (1st Cir. 2001).

"The two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  First, the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness.  *Id.* at 58-59; *Strickland*, 466 U.S. at 687-88.  Second, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 59.

As will be demonstrated below, Gonzalez cannot meet either *Strickland* prong.  First, Gonzalez cannot demonstrate that his two defense counsels' representation both "fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  As the *Strickland* Court recognized, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence."  *Id.* at 689.  Consequently, "[j]udicial scrutiny of counsel's performance must be highly deferential" and "a court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

In applying the *Strickland* standard, "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under the circumstances then obtaining." *United States v. Natanel*, 938 F.2d 302, 309-10 (1st Cir. 1991). As the First Circuit has recognized:

> Under *Strickland v. Washington,* ... counsel is not incompetent
> merely because he may not be perfect. In real life, there is room
> not only for differences in judgment but even for mistakes, which
> are almost inevitable in a trial setting, so long as their quality or
> quantity do not mark out counsel as incompetent.

*Arroyo v. United States*, 195 F.3d 54, 55 (1st Cir. 1999); *see Prou,* 199 F.3d at 48 (stating that "the Constitution entitles a defendant to generally proficient representation, not perfect representation"). The relevant inquiry in determining the first *Strickland* prong is whether, "considering all the circumstances, counsel's performance fell below an objective standard of reasonableness." *Lopez-Nieves v. United States,* 917 F.2d 645, 648 (1st Cir. 1990).

Second, Gonzalez cannot "affirmatively prove prejudice" – that is, that defense counsels' errors, if any, "actually had an adverse effect on the defense" and not merely "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. In the context of a guilty plea, a defendant seeking to establish prejudice "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Accordingly, with respect to the prejudice prong, it is "important to maintain the focus of an ineffectiveness inquiry on the 'fundamental fairness of the proceeding.'" *Gonzalez-Soberal v. United States*, 244 F.3d 273, 278 (1st Cir. 2001), quoting *Strickland*, 466 U.S. at 696; *see Tejeda v. Dubois*, 142 F.3d 18, 22 (1st Cir. 1998) (observing that

under the prejudice prong, "we must also contemplate 'whether the result of the proceeding was fundamentally unfair or unreliable'").

An evidentiary hearing is unnecessary on a §2255 petition where, as here, "(1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations . . . state conclusions instead of facts, contradict the record, or are 'inherently incredible.'"  *David v. United States*, 134 F.3d 470, 477-78 (1st Cir. 1998); *cf. Machibroda v. United States,* 368 U.S. 487 (1962); *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).   Summary dismissal of a Section 2255 claim is appropriate when a petition, as each of Gonzalez's, "(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case. " *Barrett v. United States*, 965 F.2d 1184, 1186 (1st Cir. 1992) (citations and quotations omitted); *see also Lema v. United States*, 987 F.2d 48, 51 -52 (1st Cir. 1993).

## ARGUMENT

### Gonzalez Knew the Terms of His Plea Agreements and Voluntarily Entered Into Them

Gonzalez first claims he was explicitly told by one of his two principal defense counsel, Rene Palomino, that his cases would be resolved before the same judge and that all sentencing would take place at the same sentencing hearing.[11]  He claims that this (not the other benefits of the agreements) caused him to plead guilty.   This allegation is contradicted by the record and is

---

[11]After initially contending that Rene Palomino told him that he would be sentenced at a single hearing by one judge, (Petitions at 7) Gonzalez claims that the undersigned government counsel and Mr. Palomino both did. (Petitions at 8)  Government counsel does not believe he is a necessary witness in this matter for the reasons briefed below in this section.  Accordingly, he is not attaching a statement of his own as an exhibit to avoid the potential ethical problem which could be created under Rule 3.7 (a) of the Massachusetts Rules of Professional Conduct.

inherently incredible.

Gonzalez's plea agreements were very favorable to him in two common respects.  First, as calculated by the government and subsequently found by the Courts, Gonzalez's advisory U.S. Sentencing Guidelines Offense Level mandated Gonzalez receive a life sentence.  Each of the plea agreements bound the government to recommend a term of years of varying lengths. Second, the government agreed to recommend that Gonzalez be permitted to serve all of his sentences concurrently, further significantly constraining the period of incarceration Gonzalez faced by choosing to plea guilty.

In each of the plea agreements Gonzalez signed, there was an explicit acknowledgment that no promises had been made outside of the written agreements, themselves.[12]  Judge Saris confirmed that there were none during the plea colloquy in the TJX case; Judge Woodlock in his plea colloquy in the Heartland case.[13]

Only the TJX plea agreement discussed consolidation of the cases for sentencing in Massachusetts. And there, it was explicitly conditional:

> Should either the U.S. Attorney for the Eastern District of New York or the U.S. Attorney for the District of New Jersey agree pursuant to Fed.R.Crim.P. 20 with Defendant to transfer of the case pending in their District for the purpose of his plea and sentencing, the United States Attorney for the District of Massachusetts will approve such transfer. The U.S. Attorney further agrees to *join in a motion* to have any transferred case sentenced before the same judge as is presently hearing this matter. The U.S. Attorney also agrees to *join in a request* that the sentencing in any transferred case take place at the same hearing as the sentencing in this case, so that paragraph 5(a) [seeking to have

---

[12] Dave and Buster's Plea Agreement, Exhibit 1 at ¶7; TJX Plea Agreement, Exhibit 2 at ¶17 and Acknowledgement p.11; Heartland Plea Agreement, Exhibit 3 at pp. 4 and 6.

[13] TJX and Dave and Buster's Plea Transcipt, Exhibit 4 at 11; Heartland Plea Transcript, Exhibit 5 at 19.  Judge Saris heard Albert Gonzalez's pleas in the TJX and Dave and Buster's cases sequentially on the same day.

his sentences run concurrently] may be effectuated to the fullest extent possible. *Defendant expressly understands that he may not withdraw his plea of guilty should this motion and/or this request be denied.* (Emphasis added)[14]

On its face, then, the TJX plea agreement made clear that the parties would need to request that the cases be sentenced by the same judge and that Gonzalez could not withdraw his guilty plea if this request was denied.

Rene Palomino, Gonzalez's attorney, explicitly discussed with Gonzalez that there could be no guarantees that he would be sentenced in a single sentencing by the same judge. As stated in the Affidavit of Rene Palomino, attached as Exhibit 6:

> While we were in plea discussions with the government, I personally discussed with my co-counsel Marty Weinberg and called the District Court Clerk's Office in Boston to confirm how cases are assigned in the District of Massachusetts. I then explained to Albert Gonzalez that in light of the way cases were drawn in Massachusetts he could be sentenced by more than one judge, even if all of the criminal cases were transferred there. I explained this to him before he entered into any of the plea agreements.[15]

Both Courts asked Gonzalez at their respective plea colloquies whether any other promises had been made to him. On each occasion he said that none had been.[16] Further, Gonzalez knew before he pleaded guilty in the Heartland case before Judge Woodlock or was sentenced in any of the cases that he would be sentenced separately by a separate judge in a separate proceeding in the Heartland case. At no time in any of the proceedings did he object.

Every aspect of the record thus contradicts and renders inherently incredible the claim

---

[14] TJX Plea Agreement, Exhibit 2 at ¶5.

[15] Affidavit of Rene Palomino, Exhibit 6 at ¶4.

[16] TJX and Dave and Buster's Plea Transcript, Exhibit 4 at 11; Heartland Plea Transcript, Exhibit 5 at 19.  The TJX and Dave and Buster's plea colloquies were combined.  Judge Saris asked Gonzalez whether other promises had been made to him prior to taking Gonzalez's plea in the TJX case and did not believe it necessary to re-inquire before taking the plea in the Dave and Buster's case.

that there was an agreement he would be sentenced before a single judge. Nonetheless, even if he held this groundless misperception, his failure to bring it to the Courts' attention during the Heartland plea colloquy, during the simultaneous pendency before the Courts of the three cases, or before their sentencing hearings waived his claim to having been misled.

He also was not prejudiced in any respect by being sentenced before two judges.[17] The purpose of consolidation, as reflected in the plea agreement itself, was to ensure that he would be sentenced to concurrent time to the fullest extent possible. This is exactly what happened. His three sentences are running concurrently and the sentence which Gonzalez received in the Heartland case was, but for the single day, no greater than that he received in the TJX and Dave and Buster cases.

<u>Gonzalez Could Not Have "Public Authority" to Commit His Massive Identity Thefts</u>

Gonzalez next claims that his counsel were ineffective in not telling him that he had a "public authority" defense, and had he known, he would not have pleaded guilty.  Gonzalez's recent fabrication that he was authorized by his Secret Service handlers to commit the crimes to which he pleaded guilty is refuted by the record.  Even were it not, the defense of "public authority" would not have been available to him at trial.

Gonzalez's assertion that he believed that his Secret Service handlers had the authority to authorize him, and were authorizing him, to steal over 40 million credit and debit card numbers,

---

[17] Gonzalez claims that he has been prejudiced by separate judges considering his §2255 petitions and by a detainer placed by the Marshals. Even had he been sentenced at a single hearing, any §2255 petition would have to be filed separately by Gonzalez in each of his cases. He has not demonstrated a cognizable prejudice in Judge Saris and Judge Woodlock ruling on the respective petitions before them and, a §2255 petition is not the proper vehicle for him to challenge the execution of his sentence.

sell blocks of victims' numbers through a Ukrainian fence, and bury over $1.1 million of the

proceeds in his parent's back yard is inherently incredible.[18]

At none of his sentencings did Gonzalez say that he had been authorized by the Secret

Service to commit the crimes for which he was being sentenced when asked by the Courts

whether he had anything to say in mitigation. Indeed, quite to the contrary, he declared that he

had taken advantage of his relationship with the Secret Service to commit his crimes.  Speaking

to Judge Saris before being sentence in the TJX case, Gonzalez apologized:

> I'm guilty of not only exploiting computer networks but exploiting personal
> relationships, particularly one I had with a particular agency who believed in me.
> This agency not only believed in me but gave me a second start in life, and I
> conpletely threw it away . . . I blame nobody but myself.  I've impacted the lives
> of millions of individuals, and I violated the sanctity of my parents' home by
> using it to stash proceeds.[19]

Elsewhere in his petitions, Gonzalez admits concealing the crimes to which he pleaded from the

Secret Service. When alleging his petitions' third claim, Gonzalez unhesitatingly asserts that his

"name and participation in Yastremskiy's cybercrime organization was unknown to USSS

Agents" before the Secret Service obtained from the Turkish National Police incriminating

computer files seized from Gonzalez's Ukrainian fence and co-conspirator, Maksym

Yastremskiy. [20]

Nor did Gonzalez ever claim to his own attorneys that he had been authorized to commit

---

[18] *See* TJX and Dave and Buster's Presentence Report at ¶¶57-65 (describing money laundering and proceeds); Heartland Presentence Report at 73-81 (similarly).

[19] TJX and Dave and Buster's Sentencing Transcript, Exhibit 11 at 33.  *See similarly* Heartland Sentencing Transcript, Exhibit 12 at 56.

[20] Heartland Petition at 21; *See similarly* TJX and Dave and Buster's Petition, Movant's Memorandum at 15.

his crimes.  Both of Gonzalez's defense counsel, Martin Weinberg and Rene Palomino, affirm

that Gonzalez never told them that he was authorized by the Secret Service to commit the

computer intrusions and thefts to which he pleaded guilty in his three cases.[21]

In any case, a defense of "public authority" would not have been available to Gonzalez.

It is only available to a defendant who reasonably relies on the authority of a government official

to engage in covert activity.  *See United States v. Holmquist*, 36 F.3d 154 (1st Cir. 1994); *United

States v. Baptista-Rodriguez*, 17 F.3d 1354 (11th Cir. 1994).  In order to successfully raise the

defense, a defendant must meet a four-prong test: 1) the defendant must be requested to engage

in covert activity by a government official; 2) the official must have actual authority to authorize

such covert activity; 3) the defendant must have relied on the request; and 4) the reliance must

have been reasonable.  *United States v. Hilton*, 2000 WL 894679, at *4 (D. Me. 2000) *aff'd* 257

F.3d 50 (1st Cir. 2001) citing *Baptista-Rodriguez*, 17 F.3d at 1368 n. 18.

On the record before the Courts, Gonzalez repeatedly fails to satisfy the public authority

defense's elements.  As the record reflects, his claim that he believed that he was authorized by

the Secret Service to commit the crimes to which he pleaded guilty is clearly a recent fabrication.

Even taken as true, though, Gonzalez states his handlers told him vaguely to "go do [his] thing . .

. just don't get caught," and repeatedly told the petitioner "don't worry we got your back,"[22] and

fails to demonstrate how or when he was given explicit authorization to engage in the particular

computer intrusions and data thefts to which he pleaded guilty.  The public authority defense

---

[21] Palomino Affidavit, Exhibit 6 at ¶5; Letter from Martin Weinberg dated November 10, 2011 ("Weinberg Letter"), Exhibit 7 at ¶ 5.

[22] Petitions at 15.

simply "does not allow self-authorized crimes in the hope of being useful." *United States v.*

*Cao*, 471 F,3d 1, 5 (1st Cir. 2006).

Gonzalez does not contend, nor can he establish, that his Secret Service handlers had the

actual authority to authorize the large scale crimes to which he plead guilty. Courts have

repeated held "if the Government official in question did not have actual authority to engage the

defendant in . . . illegal conduct, then the defendant's mistaken reliance, even if reasonable, is a

mistake of law and, therefore, not a valid defense." *Hilton*, 2000 WL 894679, at \*4; *see also*

*Holmquist*, 36 F.3d at 161 n.6.

Thus, the public authority defense was completely unavailable to Gonzalez.

Accordingly, it was objectively reasonable for counsel not to raise the defense, and Gonzalez

cannot show that he was prejudiced when his counsel did not do so before he pleaded guilty. *See*

*Hill*, 474 U.S. at 59 ("the defendant must show that there is a reasonable probability but for

counsel's errors he would not have pleaded guilty and insisted on going to trial").

Trial Counsel Was Not Ineffective For Failing to File a Motion to Suppress Evidence Allegedly
Obtained by Torture

Gonzalez's third claim is that his counsel were ineffective for failing to file a motion to

suppress evidence allegedly obtained by torture.  The claim is disingenuous.  Gonzalez's counsel

briefed the issue extensively in the Dave and Buster's case while it was pending in the Eastern

District of New York.   He was sent a copy of the brief and the relative strengths of the

arguments were discussed with him.  Fully informed, he strategically chose to negotiate a

beneficial plea agreement first in that case, then in the TJX and Heartland cases rather than to

pursue a litigation strategy.

The Turkish National Police (the "TNP") arrested one of Gonzalez's co-conspirators,

13

Maksym Yastremskiy, on July 26, 2007 pursuant to a provisional arrest warrant issued in the Southern District of California charging Yastremskiy with the distribution of stolen credit card numbers.[23]  Secret Service agents accompanied the TNP to the arrest site, where the TNP seized Yastremskiy's laptop shortly before his arrest.  The TNP provided the Secret Service with an image of the laptop and the password to it approximately four days later.  On the laptop were recorded instant messenger communications incriminating Gonzalez in both the TJX and Dave and Buster's cases.[24]

On August 6, 2009, Rene Palomino filed an extensive and detailed letter brief in the Dave and Buster's case, a copy of which is attached as Exhibit 8.  There, he argued forcefully that incriminatory evidence found on the Yastremskiy hard drive referred to in Gonzalez's 2255 petition should not be admitted in evidence at trial.  He based his argument on a number of grounds including that "the seizures in Turkey were accompanied by the probability of force given that on June 25, 2007 the USSS could not image Yastremskiy's computer but that on the very next day, following an arrest, were able to de-encrypt and open an image of it."[25]

Gonzalez's counsel didn't ineptly fail to file a motion to suppress evidence seized from Yastremskiy's computer; Gonzalez made an informed decision to forego a litigation strategy in favor of one centered on multi-district plea negotiations.  As stated by counsel Rene Palomino in his attached Affidavit:

---

[23]The provisional arrest warrant issued in a case initially wholly unrelated to the Gonzalez investigation.  The Turkish government ultimately lodged its own charges against Yastremskiy.  He was tried and convicted in Turkey.

[24]The communications predate the crimes to which Gonzalez pleaded guilty in the Heartland case.

[25] Defendant's Dave and Buster's Letter Brief, Exhibit 8 at 16.

8.      I sent a copy of this letter brief to Albert Gonzalez and he was
fully familiar with the arguments being made on his behalf.

9.      Before the issue of admissibility was set for argument, plea
negotiations heated up. I discussed with Albert Gonzalez and his family numerous
things to consider in the plea negotiations in his criminal cases, but these included
that:

(1)      It was my opinion that the likelihood of suppressing the evidence
derived from the Turkish (Yastremskiy) and Dubai hard drives was very low;

(2)      If we were going to trial and motion hearing, we would need some
depositions in Turkey;

(3)      The likelihood of winning the three criminal cases was very low;
and

(4)      Through plea negotiations we could cap the government's
sentencing recommendations in the criminal cases.

10.      All agreed that it was sensible for Albert Gonzalez to negotiate and
enter into the plea agreements in the criminal cases.[26]

Co-counsel Martin Weinberg's description of events in his attached letter parallels Rene

Palomino's in all material respects:

I was not counsel of record in the EDNY case until after Mr. Gonzalez elected to
plead guilty and the case was transferred to the District of Massachusetts pursuant
to Fed.R.Crim.P.20. Mr. Rene Palomino was Mr. Gonzalez' primary counsel in
this matter until I filed my appearance on December 17, 2009, many months after
Mr. Gonzalez executed his plea agreement. Motions were filed in the Eastern
District of New York by both yourself [Stephen Heymann] and Mr. Palomino in
July and August of 2009. These motions raised legal issues directly relating (and
in fact matching) Mr. Gonzalez' claim that Maksym Yastremskiy was tortured in
Turkey and that the Government's acquisition of pivotal evidence tying Gonzalez
to Yastremskiy was the direct result of that torture, see August 6, 2009 letter of
Mr. Palomino to Judge Feuerstein, pages 12-16, which contains multiple requests
for evidentiary hearings to move to suppress the evidence on both Fourth and
Fifth Amendment basis, to challenge the voluntariness of Yastremskiy's
statements, and to establish that joint conduct "shocked the conscience," thereby

---

[26] Palomino Affidavit, Exhibit 6 at ¶¶8-10.

establishing a Due Process violation. Mr. Gonzalez, however, elected to enter a plea agreement in the Eastern District of New York which mooted the search and seizure and due process issues. The torture issue was not raised in either other case because Mr. Gonzalez elected to plead guilty to both the pending District of Massachusetts case ("the TJX case") and thereafter the District of New Jersey case and receive recommendations of sentences concurrent with the Eastern District of New York case before any date was set for the filing of substantive motions in either matter. The decisions to plead guilty pre-empted any subsequent filing of substantive motions such as those challenging the seizure of the Yastremskiy computer in Turkey in that the plea agreement was entered prior to the date for filing motions.

I recall communicating to Mr. Gonzalez the difficult burdens of raising the Fourth or Fifth Amendment issues that are delineated in a letter signed by Mr. Palomino and dated August 6, 2009, at pages 12-16. I informed Mr. Gonzalez that even assuming there was provable evidence that Mr. Yastremskiy had in fact disclosed his password to the arresting Turkish and United States agents due to torture, that additional substantial legal issues existed including but not limited to whether Mr. Gonzalez had standing to raise such allegations of torture and illegal search which were directed against a third party, *see, e.g., United States v. Payner,* 447 U.S. 727 (1980). Mr. Gonzalez reached his decision to execute a plea agreement and to plead guilty to the "EDNY" and D. Mass. cases as a result of discussions with Mr. Palomino in August of 2009 while he was physically in New York.

Mr. Gonzalez communicated to me his belief that Maksym Yastremskiy had been tortured in Turkey and that the torture led to the de-encrypting of his laptop. He did not provide me, to my recollection, with the basis for his belief prior to August 6, 2009. This information, corroborated by certain discovery, was in turn incorporated into the above-described August 6, 2009, letter from Mr. Palomino to Judge Feuerstein wherein Fourth and Fifth Amendment issues were raised, and multiple requests were made for evidentiary hearing to determine the extent to which the USSS directed the Yastremskiy computer search, the extent to which the Turkish arrest and search of June 26, 2007, "shocks the conscience of the Court," and to determine if Yastremskiy's statements were voluntary. Thus, the issues raised and the remedies requested were consistent with Mr. Gonzalez' belief that Yastremskiy had been tortured and that Mr. Gonzalez would be entitled to the suppression of the fruits of the arrest, torture, and search of Yastremskiy's computer. In short, Mr. Gonzalez' belief that Mr. Yastremskiy was tortured was not ignored but was instead the centerpiece of part of a lengthy legal filing seeking evidentiary hearings to enable Mr. Gonzalez to prove the factual accuracy of his belief and to seek legal relief as a result.[27]

---

[27] Weinberg Letter, Exhibit 7 at ¶¶ 2-4.

Gonzalez can neither show that his counsels' performance on his behalf with respect to the putative suppression issue was deficient or that there is a reasonable probability that, but for counsels' unprofessional errors, the result of the proceedings would have been different. For the reasons detailed previously in the government's letter briefs in the Dave and Buster's litigation, attached as Exhibits 9 and 10, Gonzalez would not have been entitled to the suppression of the fruits of a computer owned by Yastremskiy, a foreign national, on foreign soil, by a foreign law enforcement agency.[28]

Gonzalez Did Not Ask His Counsel to File Notices of Appeal

Gonzalez finally claims that both of his counsel were ineffective for failing to file notices of appeal after he was sentenced after he instructed them to do so. This claim has no more credibility than the previous three, is contradicted by the record and is inherently incredible.

Both defense counsel, Martin Weinberg and Rene Palomino, firmly deny that they were asked to file notices of appeal. Mr. Palomino, in his affidavit, avers:

> 3.     Albert Gonzalez did not ask me to file a notice of appeal on his behalf in any of the criminal cases.[29]

Mr. Weinberg, in his attached letter, avers equally unequivocally:

> [H]ad I understood that Mr. Gonzalez wanted to file a Notice of Appeal (or had I been "directed" to file one within the time frame allowed by Fed. R. App. P. 4 for such filings), I would have acted accordingly.[30]

While he might now regret the decision, Gonzalez knew he had agreed to waive his rights to file appeals from and bring collateral challenges to his convictions and sentences in the Dave

---

[28] Government's Dave and Buster's Letter Briefs, Exhibits 9 and 10, incorporated herein.

[29] Palomino Affidavit, Exhibit 6 at ¶3.

[30] Weinberg Letter, Exhibit 7 at ¶1

and Buster's and TJX cases, and to his sentence in the Heartland case.[31]  Defense Counsel Rene

Palomino had explained the waivers to Gonzalez while they were in plea discussions with the

government, and before Gonzalez signed the plea agreements which contained them.  Further,

Gonzalez had been reminded by the Courts of the waivers at each of his plea colloquies.[32]

Thus, Gonzalez's claim that he instructed his attorneys to file notices of appeal are

squarely contradicted by the record and inherently incredible in context.

Even had Gonzalez instructed his counsel to file notices of appeal following his

sentencing, an attorney does not have a duty to file the notice where there is a valid waiver of

appeal.  A waiver may preclude an ineffective assistance of counsel claim based on the

attorney's failure to appeal.[33]  *See United States v. Mabry*, 536 F.3d 231, 241-44 (3rd Cir. 2008)

(absent miscarriage of justice, defendant's knowing and voluntary waiver of his direct appeal

and collateral challenge rights can bar claim alleging ineffective assistance of counsel based on

counsel's failure to file a notice of appeal though asked to do so); *Nunez v. United States*, 546

F.3d 450, 455 (7th Cir. 2008) ("[W]ith the [appeal] waiver in force, counsel's duty to protect his

client's interests militates against filing an appeal"); *cf. U.S. v. Tajeddini*, 945 F.2d 458, 456 (1st

---

[31] In varying forms, Dave and Buster's Plea Agreement, Exhibit 1 at ¶4; TJX Plea Agreement, Exhibit 2 at ¶8; Heartland Plea Agreement, Exhibit 3 at 4 and Schedule A p.7 ¶6.

[32] TJX and Dave and Buster's Plea Transcript, Exhibit 4 at 18-19, 42-43; Heartland Plea Transcript, Exhibit 5 at 21.

[33] In *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), the Supreme Court held an attorney's failure to file an appeal upon being instructed to do so by his client constitutes professionally deficient performance; filing an appeal "cannot be considered a strategic decision... [but instead] is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes."  However, *Flores-Ortega* left open whether its holding would control where the defendant waived his right to appeal or collateral attack. *See United States v. Mabry*, 536 F.3d 231, 239-40 (3rd Cir. 2008) (noting the facts in *Flores-Ortega* did not include a waiver).

Cir. 1991) (recognizing before the Supreme Court's opinion in *Flores-Ortega* that the presence

of an appellate waiver may be an exception to the rule that the failure of court-appointed counsel

to prosecute an appeal is a per se deprivation of the right to counsel). *But see, e.g., Nunez*, 546

F.3d at 453 (acknowledging, before disagreeing, that seven other courts of appeals have held that

a waiver of appeal does not relieve counsel of the duty to file a notice of appeal on a client's

request, collecting cases); *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007); *United

States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007); *Watson v. United States*, 493 F.3d 960, 964

(8th Cir. 2007).

<u>Gonzalez Waived His Right to File a Collateral Attack</u>

   While the Courts need not reach the issue, Gonzalez waived his right to challenge his

conviction and sentences.  By knowingly and voluntarily pleading guilty in the Dave and

Buster's, TJX and Heartland cases, Gonzalez waived his right to challenge that the government's

evidence was sufficient to sustain a conviction or that the government obtained evidence

unlawfully.  *Broce*, 488 U.S. at 569; *see generally,* 1A Charles Wright, Andrew Leipold, Peter

Henning and Sarah Welling, *Federal Practice and Procedure* §172 (4th ed. 2011) (collecting

cases).  Gonzalez has not alleged or sought to challenge his sentence in any of the three cases.

Further, Gonzalez explicitly waived his rights to appeal or collaterally challenge his sentence in

the plea agreements in all three cases and his right to appeal or collaterally challenge his

conviction in the Dave and Buster's and TJX cases.[34]  Gonzalez discussed each of the waivers

---

[34] Dave and Buster's Plea Agreement, Exhibit 1 at ¶4; TJX Plea Agreement, Exhibit 2 at
¶8; Heartland Plea Agreement, Exhibit 3 at 4 and Schedule A p.7 ¶6.  In the Heartland case,
Gonzalez waiving his right to appeal or collaterally attack receiving a particular sentence
logically subsumes waiving the right to appeal or collaterally attack the plea and conviction
without which you cannot be sentenced.

with counsel[35] and confirmed in writing that he understood them when he executed the

agreements. A knowing and intelligent waiver of collateral challenge is enforcable in the same

manner as a waiver of appeal, unless it would result in a miscarriage of justice.  *See United

States v. Ciampi*, 419 F.3d 20, 25-27 (1st Cir. 2005) (applying *United States v. Teeter*, 257 F.3d

14, 24 (1st Cir. 2001) in the context of a collateral challenge waiver*)*; *see also*, *United States v.

Newbert,* 504 F.3d 180, 182 (1st Cir. 2007).

<u>CONCLUSION</u>

The Petitions Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentences filed by

Albert Gonzalez should be denied without an evidentiary hearing.

Respectfully submitted,


CARMEN M. ORTIZ
United States Attorney

Dated: December 6, 2011

By: <u>/s/  Stephen P. Heymann</u>
STEPHEN P. HEYMANN
Assistant U.S. Attorney

---

[35] Palomino Affidavit at ¶2.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that a paper copy will be sent to:

>       Albert Gonzalez, No. 25702-050
>       FCI Milan
>       P.O. Box 1000
>       Milan, Michigan 48160

Dated: December 6, 2011         */s/ Stephen P. Heymann*
                                STEPHEN P. HEYMANN