```
                 UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
```

|   |   |
|---|---|
| Albert Gonzalez | ) Criminal No. 08-10223-PBS |
| Petitioner, | )              09-10262-PBS |
| v. | ) |
| United States of America, | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

November 8, 2012

**Saris, U.S.D.J.**

### I. Introduction

Pro se Petitioner Albert Gonzalez has moved for habeas corpus, stating four grounds for relief: 1) his guilty plea was induced by a promise that his three cases would be heard by the same judge; 2) counsel provided ineffective assistance by not presenting a public authority defense; 3) counsel provided ineffective assistance by failing to file a motion to suppress evidence allegedly obtained through torture; and 4) counsel failed to file a notice of appeal after the petitioner requested such notice be filed.[1]  He has requested an evidentiary hearing. For the reasons set forth below, the Court **<u>DENIES</u>** Gonzalez's petition without an evidentiary hearing.

---

[1]   He also filed a similar petition in the so-called "Heartland" case, Criminal No. 09-10382-DPW.

## II. Background

1. <u>Shadow Ops</u>

In his petition and affidavit, Gonzalez alleges the following facts, many of which are disputed. In 2003, following his arrest for access device fraud, Gonzalez became a confidential informant for the United States Secret Service. Between 2003 and 2008, he went on to commit a variety of computer crimes, identity thefts, and fraud. Secret Service agents, including his primary handler, Agent Ward, authorized Gonzalez to commit many of these criminal acts as part of different covert operations, including operation "Shadow Ops." He claims his crimes were designed to gain the trust and confidence of international cyber-criminals.

In 2007, Secret Service agents worked in concert with the Turkish National Police to arrest one of these international cyber-criminals, Maksym Yastremskiy, in Antalya, Turkey. On July 25, 2007, the police seized a Lamborghini laptop computer belonging to Yastremskiy. Unable to gain access to parts of the laptop, on July 26, 2007, the police in Turkey tortured Yastremskiy until he revealed the pass phrase. The laptop contained encrypted containers ultimately inculpating Gonzalez in Yastremskiy's cyber-crime organization.

2.   <u>Post-Indictment</u>

Less than one year later, on May 14, 2008, Gonzalez and Yastremskiy were indicted in the Eastern District of New York ("Dave and Buster's case"). Gonzalez would go on to be indicted for other cyber-crimes in the District of Massachusetts ("TJX case") on Aug. 5, 2008 and the District of New Jersey ("the Heartland case") on Aug. 17, 2009. Following his arrest, Gonzalez asked the Secret Service to call his handlers to verify he was an active confidential informant. After the agents ignored his claims, Gonzalez says he explained to his attorneys that as an informant, he had been instructed and authorized to engage in the illegal activity for which he was now being prosecuted.

Sometime between May 2008 and early July 2009, Gonzalez further informed his attorneys about the torture of Maksym Yastremskiy. In response to Gonzalez's allegations, his attorney in New York, Mr. Rene Palomino, asked whether Gonzalez's family had money to pay for the investigation expenses of traveling to Turkey to investigate and interview witnesses. Mr. Palomino contacted Gonzalez's mother to ask her if the family had money to pay for the expenses of this trip. This conversation between Mr. Palomino and Ms. Gonzalez took place in the first part of July 2009. After he discovered neither Gonzalez nor his family could pay for an investigatory trip to Turkey, Mr. Palomino informed

Gonzalez that without an affidavit from Mr. Yastremskiy, he could not file a motion to suppress the evidence.  Though counsel did not file a motion to suppress, he did litigate the matter in New York through letter briefs in opposition to the government's Motion *In Limine* For Admission of Foreign Computer Evidence.  The parties reached a plea agreement before the court issued a ruling.

The Dave and Buster's and Heartland cases were ultimately transferred to the District of Massachusetts pursuant to plea agreements.  <u>See</u> Mass. Plea Agreement ¶ 5, Aug. 24, 2009 (Doc. No. 137, Ex. 2).  Under the binding plea agreements, the petitioner waived his right to directly appeal or collaterally attack any sentence of 25 years of imprisonment or less.

When the case arrived in Massachusetts from the Eastern District of New York, it was randomly assigned to me.  As promised, the United States Attorney joined in a subsequent motion to assign the New Jersey case to the same judge.  On September 8, 2009, that motion was denied under a local rule mandating random assignment of cases.  Three days later, pursuant to the plea agreements in Massachusetts and New York, Gonzalez pled guilty to one count of conspiracy, five counts of damage to computer systems, four counts of wire fraud, five counts of access device fraud, and four counts of aggravated identity theft.  On March 25, 2010, the Court imposed a term of

incarceration of 20 years.  The New Jersey case was ultimately assigned to another judge of this court (Woodlock, J.) who imposed a term of incarceration of 20 years and one day.  This sentence ran concurrently with my sentence.

Gonzalez alleges that following the sentencing, he instructed his attorneys to file a Notice of Appeal.  His attorneys have submitted affidavits denying this contention.

### III. Analysis

Section 2255 "provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (citing Hill v. United States, 368 U.S. 424, 426-27 (1962)).  The petitioner bears the burden of establishing the need for section 2255 relief, as well as that of showing the need for an evidentiary hearing.  See Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992).  An evidentiary hearing is not required where the section 2255 petition, any accompanying exhibits, and the record evidence "plainly [reveal] . . . that the movant is not entitled to relief."  Id. (quoting Rule 4(b), Rules Governing § 2255 Proceedings).  Summary dismissal of a section 2255 claim is appropriate when the petition (1) is

Case 1:08-cr-10223-PBS   Document 140   Filed 11/08/12   Page 6 of 14

inadequate on its face, or (2) although facially adequate, is conclusively contradicted as to the alleged facts by the files and records of the case.  Id.

1. Ground One - Inducement of Guilty Plea

Gonzalez's first claim is that his guilty plea was not knowing and voluntary because his lawyer and the government made the false promise that all three cases would be in one district, before one judge and resulting in one sentence.  The Massachusetts plea agreement promises only that the United States Attorney would "join in a motion to have any transferred case sentenced before the same judge ..." and explicitly mentions the possibility of that motion being denied.  See Mass. Plea Agreement § 5 (Doc. No. 137 ex. 2) ("Defendant expressly understands that he may not withdraw his plea of guilty should this motion ... be denied").  Gonzalez stated under oath that he read, discussed, and understood the plea agreements, and that no one had made any promises apart from those in the agreements. See Rule 11 Hr'g at 7-11 (Doc. No. 58).

The promised joint motion was denied three days before he pled guilty on Sept. 11, 2009.  See Electronic Order, Sept. 8, 2009.  During the hearing in which Gonzalez pled guilty, the Court specifically mentioned this outcome stating that "as much as it makes a huge amount of sense to have me take these cases, it was by ... serendipity that it ended up here, but the next one

might not." Rule 11 Hr'g at 54 (Doc. No. 58).  But Gonzalez did not voice dissatisfaction with this arrangement until after sentencing, more than six months later.  Petition at 5 (Doc. No. 121).  Additionally, Gonzalez has failed to demonstrate significant prejudice arising from Judge Woodlock's concurrent sentence of 20 years and one day.  Because Gonzalez's inducement claim is contradicted by the record, the Court denies it without an evidentiary hearing.

2.  Ground Two - Public Authority Defense

Gonzalez alleges his attorneys were ineffective in failing to present a public authority defense.  Specifically, Gonzalez claims he was a confidential informant and as an informant, Secret Service agents, including his primary handler, Agent Ward, authorized him to commit the relevant criminal acts as part of operation "Shadow Ops."

The public authority defense "applies where the conduct of the defendant was undertaken at the behest of a government official with power to authorize the [criminal activity]." United States v. Cao, 471 F.3d 1, 4 (1st Cir. 2006).  This power must be actual, because the "'defense' of apparent public authority is . . . . not a defense at all."  United States v. Holmquist, 36 F.3d 154, 161 n.6 (1st Cir. 1994).

The First Circuit has made clear that government agents do not have the power to unilaterally authorize "extraordinary"

criminal activities which involve "severe financial loss to a victim" without obtaining written approval from the United States Attorney. United States v. Flemmi, 225 F.3d 78, 89 (1st Cir. 2000). The government contends Gonzalez caused hundreds of millions of dollars in financial losses from the theft of over 40 million credit and debit card numbers involving companies like TJX and Dave and Buster's. This was not disputed at sentencing. Gonzalez does not claim the United States Attorney ever provided written authorization for the relevant criminal activities. Moreover, even if agents could have authorized the conduct, Gonzalez's own factual assertions undermine his present allegation that the agents authorized his criminal conduct underlying the crime for which he was sentenced. Before being sentenced in the TJX case, Gonzalez stated, "I'm guilty of not only exploiting computer networks but exploiting personal relationships, particularly one I had with a particular agency who believed in me." (Doc. No. 137, Ex. 11 at 33). He also said in his petition that the government did not know of his involvement in Yastremskiy's cybercrime organization (Memo at 15). Petitioner can't have it both ways.

Because Gonzalez fails to demonstrate a viable public authority defense, the alleged failure of counsel to present such a defense does not constitute ineffective assistance of counsel.

Therefore, Ground Two is insufficient on its face and is denied without an evidentiary hearing.

3.  <u>Ground Three - Motion to Suppress</u>

Gonzalez alleges his attorneys provided ineffective assistance of counsel by failing to file a motion to suppress evidence obtained as a result of the TNP's alleged torture of a third party, Maksym Yastremskiy, in Turkey.  The government argues Gonzalez lacked standing to file the motion, and chose to forgo this litigation strategy, which his attorneys discussed with him, in favor of pursuing a multi-district plea agreement. The government points out that Gonzalez's counsel, Rene Palomino, did brief this issue extensively in the Dave and Buster's case while it was pending in the Eastern District of New York.  His Massachusetts counsel, Martin Weinberg, Esq., also addressed the possible issues with him.

A defendant generally does not have standing to challenge evidence under the Due Process Clause simply because government misconduct caused conscience-shocking harm to a third party.  <u>See United States v. Payner</u>, 447 U.S. 727, 735 (1980); <u>United States v. Santana</u>, 6 F.3d 1, 8-9 (1st Cir. 1993)(suggesting that a due process defense based on outrageous government misconduct is not available if the misconduct only harmed third parties, but not the defendant); <u>cf.</u> <u>United States v. Noriega</u>, 117 F.3d 1206, 1214 (11th Cir. 1997) (killing Panamanian civilians during seizure of

9

defendant cannot support defendant's due process claim). Instead, the limitations of the Due Process Clause only become relevant if the government activity in question violates some protected right of the defendant, such as the right to a fair trial.  See Payner, 447 U.S. at 737 n.9.  Courts have recognized that a defendant's right to a fair trial could be violated if unreliable evidence, such as a confession, is obtained through coercion of a third party.  See, e.g., Buckley v. Fitzsimmons, 20 F.3d 789, 795 (7th Cir. 1994) ("Confessions wrung out of their makers may be less reliable than voluntary confessions, so that using one person's coerced confession at another's trial violates his rights under the due process clause.").

   Here, Gonzalez makes no allegations that Yastremskiy's torture led to the recovery of unreliable evidence.  Instead, he alleges Yastremskiy's torture yielded an accurate computer password that led to inculpatory information.  A defendant cannot prove prejudice without proving a reasonable probability of suppression.  See Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).  Because he has not proved a reasonable probability of suppression, Gonzalez fails to state a claim for ineffective assistance of counsel.

4.    <u>Ground Four - Notice of Appeal</u>

Gonzalez alleges he instructed his attorneys to file a Notice of Appeal immediately after he was sentenced, but, without his knowledge or consent, they decided not to do so.  Generally, an attorney's failure to file an appeal upon being instructed to do so by his client constitutes professionally deficient performance.  See <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000).  However, in situations where the defendant waived the right to appeal in a plea agreement, ineffectiveness of counsel in not pursuing a waived appeal is "less than clear."  <u>United States v. Mabry</u>, 536 F.3d 231, 244 (3d Cir. 2008); <u>see id.</u> at 240-242 (discussing circuit split).  The majority rule appears to be that "even when a defendant waives all or most of his right to appeal, an attorney who fails to file an appeal that a criminal defendant explicitly requests, has, as a matter of law, provided ineffective assistance of counsel that entitles the defendant to relief in the form of a delayed appeal."  <u>Campbell v. United States</u>, 686 F.3d 353, 360 (6th Cir. 2012); <u>see</u> <u>Campusano v. United States</u>, 442 F.3d 770, 773 (2d Cir. 2006); <u>but see</u> <u>Nunez v. United States</u>, 546 F.3d 450, 456 (7th Cir. 2008).  The First Circuit has not yet directly ruled on this issue.

Assuming (without deciding) that the majority rule governs here, petitioner's claim nonetheless fails.  Both of Gonzalez's experienced attorneys indicated he did not ask them to file a

notice of appeal.  Mr. Palomino stated, "Albert Gonzalez did not ask me to file a notice of appeal on his behalf in any of the criminal cases."  Palomino Aff. ¶ 3 (Doc. No. 137 ex. 6).  Similarly, Mr. Weinberg noted, "Had I understood that Mr. Gonzalez wanted to file a Notice of Appeal (or had I been 'directed' to file one within the time frame allowed by Fed. R. App. P. 4 for such filings), I would have acted accordingly."  Letter from Martin Weinberg to Stephen Heymann (Nov. 10, 2011) ¶ 1 (Doc. No. 137 ex. 7).  The question is whether this fact dispute necessitates an evidentiary hearing.

Gonzalez fails to provide any corroboration for his claims.  Cf. United States v. Butt, 731 F.2d 75, 78, 80 n.5 (1st Cir. 1984)(claims of attorney misrepresentations usually require independent corroboration).  In some situations, evidentiary hearings have been granted when a defendant claims that in addition to requesting that his attorney appeal, he repeatedly called his attorney to follow up on his request.  See, e.g., Rodriguez v. United States, 741 F. Supp. 2d 344, 346 (D. Mass. 2010).  Gonzalez makes no such claim, and in his only reported contact with his attorneys after sentencing, Gonzalez makes no mention of his alleged prior request.  See Exhibits in Supp. of § 2255 Mot. at 10-11 (Doc. No. 121-1).  He simply claims he wasn't consulted.

When a defendant receives the sentence recommended by his plea bargain, his subsequent contested allegation that he asked his attorney to appeal is "highly implausible."  Zanuccoli v. United States, 459 F. Supp. 2d 109, 111-12 (D. Mass. 2006). Gonzalez's 20-year sentence fell squarely within the jointly recommended range of 15 to 25 years.  See Sentencing at 36 (Doc. No. 94).  Gonzalez had waived his right to appeal a sentence within that range.  See Rule 11 Hr'g at 15 (Doc. No. 58). Gonzalez stated he understood he had waived that right.  Id. at 43.  The court informed Gonzalez of his right to appeal his sentence on March 25, 2010, and again on March 26, 2010.

After a review of the record, the Court concludes that Gonzalez's claim that he instructed his attorneys to file a notice of appeal is inherently incredible because 1) it is contradicted by two attorneys, 2) it is not supported by any corroborating evidence, 3) the Court imposed a sentence midpoint in the jointly recommended range in a plea agreement that contained an appeal waiver, and 4) the defendant waited until almost one year after sentencing before making any allegation he asked his attorneys to file a notice of appeal.  Moreover, petitioner does not contend that the waiver of the right to appeal was not knowing and voluntary, and there is no evidence of a miscarriage of justice.  Cf. Hernandez v. Reno, 238 F.3d 50, 57 (1st Cir. 2001) (finding it unbelievable that a defendant would sit on his hands for years rather than monitor his lawyer's

13

actions and assure his appeal was being pursued).  Accordingly, this claim is denied without an evidentiary hearing.

### IV. Order

The petition (Doc. No. 121) is **DENIED**. I **DENY** a Certificate of Appealability.

                               /s/ PATTI B. SARIS  
                               PATTI B. SARIS  
                               United States District Judge